IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL J. CIESLIK and** | ) | **PLAINTIFFS DEMAND** |
| **SMITHA MATHEN,** | ) | |
| | ) | **TRIAL BY JURY** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| **BOARD OF EDUCATION OF THE** | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| Defendant | ) | |

## COMPLAINT AND JURY DEMAND

Plaintiffs, DANIEL J. CIESLIK and SMITHA MATHEN, by their attorneys, Elaine K.B. Siegel & Assoc., P.C., and complain as follows regarding Defendant, Board of Education of the City of Chicago ("Board", sometimes "CPS"):

### PARTIES

1. Plaintiff DANIEL J. CIESLIK is a citizen of the State of Illinois and resides in the City of Chicago. Cieslik is Caucasian.

2. Plaintiff SMITHA MATHEN is a citizen of the State of Illinois and resides in the City of Chicago. Mathen is South Asian, of Indian ancestry.

3. Defendant Board of Education of the City of Chicago is a body politic and corporate, with its principal place of business in Chicago, Illinois. At all relevant times, Defendant employed more than 500 regular employees.

### JURISDICTION, VENUE, AND PREREQUISITES

4. Plaintiffs bring this action for damages and equitable relief pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq.*; Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, *et seq.*; and 42 U.S.C. § 1988.

1

5. Jurisdiction for this action is conferred upon the Court by 28 U.S.C. §§ 1331 and 1343.

6. Venue is appropriate pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this judicial district and the events giving rise to this claim occurred in this district.

### JURY DEMAND

7. Plaintiffs demand a jury trial on all issues so triable.

### FACTUAL BACKGROUND

8. Plaintiffs are experienced educators, who have worked at all relevant times at Consuella York Alternative High School ("York"). York is a high school that serves juveniles detained at Cook County Jail, allowing them to continue their education while incarcerated.

9. The student body of York is 76.6% African-American, 19.1% Hispanic, 2.8% Caucasian, and 1.4% other. 95% of the students are low income. 26.2 % are diverse learners, i.e., need special support, and 4.3% of the students have limited English proficiency. The school has a high mobility rate, 94.1%.

10. Plaintiff Cieslik, a tenured teacher, has been a math teacher at York since approximately 2014.

11. Plaintiff Mathen is a tenured teacher with 18 years of experience. Plaintiff Mathen has been a science teacher at York for 12 years.

12. Plaintiffs have been subjected to disparagement, unwarranted discipline, unfair performance evaluations, and differential terms and conditions of employment by the Board and its employees, including York's Principal, Sharnette Sims (African-American); York's Assistant Principal, Shone Johnson (African-American); and James

2

Ciesil, Deputy General Counsel for the Board of Education of the City of Chicago (Caucasian).

13. Additionally, the York administration has violated their obligations to notify authorities of student disciplinary action, including sexual harassment. York has only reported a maximum of 10 incidents to CPS each year, resulting in a false and fraudulent picture of the safety and security of working and learning conditions at York.

14. The York administration, moreover, has discouraged teachers from reporting student disciplinary infractions. Where teachers do report infractions, the York administration fails to impose needed discipline, endangering students and faculty.

## OIG Investigation and Report

15. In the fall of 2016, the Office of the Inspector General ("OIG") began an investigation into allegations of fraudulent practices, sexual improprieties and assaults at York. The OIG selected teachers to interview, and contacted Plaintiffs Mathen and Cieslik in the course of the investigation.

16. Plaintiffs Mathen and Cieslik truthfully reported to the OIG regarding their knowledge of practices and incidents at York.

17. The OIG issued a report on or about September 12, 2017 ["OIG Report"], finding that the York administration, and its principal, Sharnette Sims, engaged in practices that misrepresented the performance of the school, thus inflating its performance metrics. A true and correct of the OIG Report is attached as Exhibit A.

   a. Underreporting of disciplinary issues, including violations of the Student Conduct Code regarding sexual assault and harassment.
   b. Falsely inflating enrollment and attendance data.

    c. Awarding students credits that were not earned; pressuring teachers into issuing credits to students who had not earned them.

    d. Inflating graduation rates.

18. The OIG Report also revealed dangerous student behaviors, including sexual improprieties at York, finding that some teachers were discouraged from reporting dangerous incidents at the school. These incidents include: assaults, chronic classroom masturbation, and threatening conduct by an organized faction of students who committed sexual assaults in the jail.

19. Based on the findings of its investigation, the OIG recommended that Principal Sims be removed from her position.

20. Shortly thereafter, the Board removed Principal Sims from York.

21. Despite her removal, on information and belief, Principal Sims continued to perform administrative duties.

22. Two months later, on or about November 9, 2017, the Board reinstated Principal Sims. On information and belief, the Board had never before rejected the recommendations of the OIG.

23. In reaction to the OIG report, the Board purported to conduct their own investigation of York.

24. In the course of this investigation, Plaintiffs Cieslik and Mathen were interviewed by James Ciesil, Deputy General Counsel for the Board, who led the investigation. In response to his questions, Cieslik and Mathen confirmed the allegations that they and their colleagues made to the OIG.

25. Due to the sensitive nature of the report, Attorney Ciesil stated that employee names would be redacted for confidentiality.

26. On or about November 2, 2017, CPS released to the media a Memorandum outlining Ciesil's investigation and recommending the reinstatement of Sims. ("CPS Report". A true and correct copy of the CPS Report was published in the Chicago Sun-Times and other media outlets.

27. The CPS Report was captioned, "Attorney-Client Privileged Work Product Document." It states, *inter alia,* "[T]his author has included confidential information concerning student records and employment records …. <u>Accordingly, this author cautions that only persons who have a legally permissible basis for seeing such information may review the LDR without redactions</u>." (Emphasis original.)

28. The CPS Report contained identifying information regarding Plaintiffs. It was initially published without redactions, and Plaintiffs' names were disclosed. Subsequently, it was redacted, but only partially. In the on-line versions, the redactions could be readily removed, again displaying the names of Plaintiffs.

29. The CPS Report identified Plaintiffs by race. It expressly stated that there was a "racial" element to the OIG investigation, insinuating that those teachers who gave information regarding Principal Sims and York were motivated by race. Referring to Plaintiffs and other interviewees, the CPS Report further stated, "The racial implications also are apparent."

30. The CPS Report besmirched the reputations of Plaintiffs, stating that "most of the teachers interviewed by the OIG had been disciplined by Dr. Sims or had engaged in some other action that tends to show bias." The report stated that 9 of the 10 teachers interviewed by the OIG "had all filed grievances, EOCO charges [equal opportunity charges], been disciplined or been denied a promotion by Dr. Sims…"

31. The CPS Report misrepresented Plaintiff Mathen's performance evaluations.

32. The Board's release of the investigative report was unprecedented. On information and belief, the Board has never released a public report attacking an investigation by OIG.

33. In its Annual Report for 2017, dated January 1, 2018, the OIG stated, "As the OIG has stated, it stands by its report. Unfortunately, Law misunderstood and mischaracterized several aspects of the OIG's investigation. Contrary to Law's assertions, the OIG's report does not contain significant errors. Because the OIG stands by its investigation and findings, the OIG will be addressing this matter with the new administration in the upcoming year."

34. After the CPS Report was released, the Network Chief recommended that everyone read the report, vindicating Dr. Sims.

35. The CEO of CPS, Forrest Claypool, issued a statement thanking Principal Sims, and apologizing to her for the "blight on her reputation" caused by the OIG investigation and report.

36. The Board reinstated Principal Sims.

37. The Board's accusations that the evidence from the York faculty, including Plaintiffs Mathen and Cieslik, was racially motivated were false and pre-textual.

38. Similarly-situated Caucasian principals were removed from their schools based on reports by the OIG of irregularities comparable to those at York:

   a. On or about November 1, 2018, the Board removed a longtime CPS principal from Ogden Elementary School, pursuant to an OIG report for practices that inflated attendance records, thus improving the school's performance rating.

    b.   During the summer of 2018, the Board removed interim principal Jessica Biggs from her position at Burke Elementary School, alleging attendance and student transportation irregularities.

39.    Plaintiffs Cieslik and Mathen quickly felt the repercussions from the CPS Report, as the Sims administration stoked anger against them.

40.    Sims gave Mathen a biased performance evaluation, despite Mathen's successful grievance. Plaintiff's evaluations declined, as well. The evaluations fail to comply with the evaluation rubric of the Board which purports to standardize teacher evaluations according to specific evidence and evaluative criteria.

41.    Plaintiffs attempted to address the discrimination and retaliation, contacting the Board's compliance office, the Equal Opportunity Compliance Office ("EOCO"). No ameliorative action was taken.

42.    On or about May 8, 2018, Plaintiff Cieslik filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights complaining of discrimination based on race, color, and retaliation.

43.    On or about June 28, 2018, Mathen filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights complaining of discrimination based on race, color and retaliation. Those charges remain pending.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VI

1-44. Plaintiff repeats and re-alleges paragraphs 1 through 44 above as though fully set forth herein.

7

44. Title VI of the Civil Rights Act of 1964, 42 U.S.C §§ 2000d, *et seq.* ("Title VI"), prohibits employment discrimination on the basis of race in the terms, conditions, salary and benefits of its employees.

45. At all material times, Defendant Board was receiving federal funding, as contemplated by Title VI.

46. The Board discriminated against Plaintiffs based on their race, Caucasian, in violation of Title VI, because:

   a. Plaintiffs were members of a protected class;

   b. Plaintiffs participated in the OIG investigation, which included findings of sexual harassment and hostile work environment, and irregularities in attendance, discipline, course credits and graduation statistics at York, under the leadership of Principal Sims;

   c. Plaintiffs participated in the OIG investigation, which concluded with a recommendation that Principal Sims be removed from her position at York;

   d. Defendant Board published a report with false and erroneous information, indicating that Plaintiffs had given the OIG false and/or misleading information;

   e. Defendant Board published a report indicating that the Plaintiffs were disgruntled employees with performance issues;

   f. Defendant Board published a report that revealed the race of Plaintiffs, and indicated that they were racially motivated;

   g. The Board removed similarly-situated Caucasian principals for comparable misconduct;

   h. The Board reinstated Principal Sims;

    i. Defendant Board issued negative and false performance evaluations to Plaintiffs; and

    j. Similarly-situated individuals of a different race were treated more favorably than Plaintiffs.

    k. The Board knew of the discrimination of Plaintiffs by Principal Sims, but failed to take corrective action.

47. As a proximate result of the Defendant's discriminatory actions, Plaintiffs have suffered loss of reputation, loss of job opportunities, compensatory damages, and have incurred attorney's fees and costs.

48. Plaintiffs have suffered irreparable injury.

49. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs Mathen and Cieslik pray that this Honorable Court find that Defendant Board engaged in discriminatory conduct against them, and enter a judgment granting the following relief:

    a. Direct the Board to cease its discrimination and retaliation against Plaintiffs;

    b. Award Plaintiffs money reasonably calculated to compensate them for all the monetary damages sustained as a result of the discrimination and retaliation by Defendants;

    c. Award Plaintiffs money reasonably calculated to compensate them for reputational injury, emotional distress and any direct physical injury or sickness;

    d. Award Plaintiffs punitive damages for Defendant's willful and malicious acts, and to deter further unlawful discrimination and retaliation;

    e. Enter an order directing the Board to expunge the false evaluations of Plaintiffs;

f.  Enter an order directing the Board to cause the York administration to adhere to the CPS performance evaluation rubric, and to fairly administer its performance evaluations of staff;

g.  Award reasonable attorneys' fees, expert witness fees, and costs ; and

h.  Award such other relief as it may deem just and equitable.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VI

1-50.  Plaintiff repeats and re-alleges paragraphs 1 through 50 above, as though fully set forth herein.

50.  Title VI prohibits retaliation against employees who complain of or oppose race discrimination.

51.  Plaintiffs engaged in statutorily protected activity by participating in the investigations of the OIG and of Board Counsel.

52.  In the CPS Report the Board charged that Plaintiffs' participation in the OIG and CPS investigations was racially motivated.

53.  In response to Plaintiffs' participation in the OIG investigation, the Board retaliated against Plaintiffs by releasing, publishing, and widely disseminating a report that contained identifying information, unlawfully disclosed personnel information, and improperly failed to redact their names.

54.  In response to Plaintiffs' participation in the OIG investigation, the Board retaliated against Plaintiffs by releasing, publishing, and widely disseminating a report that besmirched their reputations by casting them as disgruntled employees with racist motivations, and by failing to protect them against discrimination and harassment at York.

55. The Board retaliated against Plaintiffs by releasing, publishing, and widely disseminating a report that impugned their integrity.

56. In response to their participation in the OIG investigation, the Board retaliated against Plaintiffs by giving them false negative performance evaluations that jeopardized their careers and threatened to disqualify them from other job opportunities.

57. The Board retaliated against Plaintiffs with malice and/or reckless indifference to Plaintiffs' federally protected rights.

58. As a proximate result of the Board's retaliatory actions, Plaintiffs have suffered emotional distress, loss of reputation, compensatory damages, and have incurred attorney's fees and costs.

59. Plaintiffs have suffered irreparable injury.

60. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs Daniel Cieslik and Smitha Mathen pray that this Honorable Court find that Defendant Board engaged in retaliatory conduct against them, and enter a judgment granting the following relief:

a. Direct the Board to cease its discrimination and retaliation against Plaintiffs;
b. Award Plaintiffs money reasonably calculated to compensate them for all the monetary damages sustained as a result of the discrimination and retaliation by Defendants;
c. Award Plaintiffs money reasonably calculated to compensate them for reputational injury, emotional distress and any direct physical injury or sickness;

d. Award Plaintiffs punitive damages for Defendant's willful and malicious acts, and to deter further unlawful discrimination and retaliation;

e. Enter an order directing the Board to expunge the false evaluations of Plaintiffs;

f. Enter an order directing the Board to cause the York administration to adhere to the CPS performance evaluation rubric, and to fairly administer its performance evaluations of staff;

g. Award reasonable attorneys' fees, expert witness fees, and costs ; and

h. Award such other relief as it may deem just and equitable.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE IX

1-61. Plaintiffs repeat and re-allege paragraphs 1 through 61 above as though fully set forth herein.

61. Title IX prohibits retaliation against employees who oppose sex discrimination.

62. Plaintiffs engaged in statutorily protected activity by opposing the sex discrimination and harassment to which colleagues were subjected, by participating in investigations of York by the OIG and Attorney Ciesil.

63. The Board knew about Plaintiffs' protected activity.

64. In response to this protected activity, the Board retaliated against Plaintiffs by accusing them of racist motivations, impugning their integrity, defaming their reputations, and giving false negative performance evaluations that prospectively denied them job opportunities.

65. The Board retaliated against Plaintiffs with malice and/or reckless indifference to Plaintiff's federally protected rights.

12

66. As a proximate result of the Board's retaliatory actions, has suffered lost wages, physical injury and sickness, emotional distress, and compensatory damages and has incurred attorney's fees and costs.

67. Plaintiffs have suffered irreparable injury.

68. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiff Daniel Cieslik prays that this Honorable Court find that Defendant Board engaged in retaliatory conduct against her, and enter a judgment granting the following relief:

a. Direct the Board to cease its discrimination and retaliation against Plaintiffs;

b. Award Plaintiffs money reasonably calculated to compensate them for all the monetary damages sustained as a result of the discrimination and retaliation by Defendants;

c. Award Plaintiffs money reasonably calculated to compensate them for reputational injury, emotional distress and any direct physical injury or sickness;

d. Award Plaintiffs punitive damages for Defendant's willful and malicious acts, and to deter further unlawful discrimination and retaliation;

e. Enter an order directing the Board to expunge the false evaluations of Plaintiffs;

f. Enter an order directing the Board to cause the York administration to adhere to the CPS performance evaluation rubric, and to fairly administer its performance evaluations of staff;

g. Award reasonable attorneys' fees, expert witness fees, and costs ; and

h. Award such other relief as it may deem just and equitable.

DATED: August 16, 2019

        Respectfully submitted,

        By:   <u>/s/ Elaine K.B. Siegel</u>
                Attorney for Plaintiff

OF COUNSEL:

Elaine K.B. Siegel & Assoc., P.C.
53 West Jackson Blvd., Suite 857
Chicago, IL 60604
Telephone: (312) 583-9970
Facsimile: (312) 583-9972 (upon prior notice)
Atty No. 6183905