IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Daniel J. Cieslik and Smitha Mathen,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>Board of Education of the City of Chicago,  )<br>)<br>Defendant.  ) | Case No. 19 CV 05553<br><br>The Honorable Edmond E. Chang |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO
<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

Defendant the Board of Education of the City of Chicago (the "Board"), through its undersigned counsel, answers Plaintiffs' First Amended Complaint [ECF No. 31] as follows:

**BOARD'S PRELIMINARY STATEMENT**

On March 29, 2021, this Court dismissed the following claims against the Board: Count I alleging discrimination under Title VI; Count II alleging retaliation under Title VI; Count IV alleging discrimination under Title VII; and Count V alleging retaliation under Title VII [*see* ECF No. 65]. Accordingly, the Board responds to Plaintiffs' remaining claims: Count III, alleging retaliation under Title IX.

**PARTIES**

1. Plaintiff DANIEL J. CIESLIK is a citizen of the State of Illinois and resides in the City of Chicago. Cieslik is Caucasian.

**<u>ANSWER</u>**: Defendant admits Plaintiff self-identifies as Caucasian and his last known address was in Chicago, Illinois. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff is currently a citizen of Illinois and resides in Chicago, and therefore denies the same.

1

2. Plaintiff SMITHA MATHEN is a citizen of the State of Illinois and resides in the City of Chicago. Mathen is South Asian, of Indian ancestry.

**ANSWER**: Defendant admits Plaintiff self-identifies as South Asian and of Indian ancestry and her last known address was in Chicago, Illinois. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff is currently a citizen of Illinois and resides in Chicago, and therefore denies the same.

3. Defendant Board of Education of the City of Chicago is a body politic and corporate, with its principal place of business in Chicago, Illinois. At all relevant times, Defendant employed more than 500 regular employees.

**ANSWER**: Defendant admits the allegations of this paragraph.

## JURISDICTION, VENUE, AND PREREQUISITES

4. Plaintiffs bring this action for damages and equitable relief pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, et seq.; Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, et seq.; and 42 U.S.C. § 1988.

**ANSWER**: Defendant admits that Plaintiffs have filed claims under the above cited statutes, but denies that Plaintiffs were subject to unlawful discrimination, retaliation, and/or are entitled to any relief.

5. Jurisdiction for this action is conferred upon the Court by 28 U.S.C. §§ 1331 and 1343.

**ANSWER**: Defendant admits this Court has jurisdiction over this action, but denies that any unlawful conduct or wrongdoing for which it may be liable or that Plaintiff is entitled to any relief.

6. Venue is appropriate pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this judicial district and the events giving rise to this claim occurred in this district.

**ANSWER**: Defendant admits that venue is proper, but denies any unlawful conduct or wrongdoing for which it may be liable or that Plaintiff is entitled to any relief.

**JURY DEMAND**

7. Plaintiffs demand a jury trial on all issues so triable.

**ANSWER**: Defendant admits Plaintiffs demand a jury trial, but denies any unlawful conduct or wrongdoing for which it may be liable or that Plaintiff is entitled to any relief.

**FACTUAL BACKGROUND**

8. Plaintiffs are experienced educators, who have worked at all relevant times at Consuella York Alternative High School ("York"). York is a high school that serves juveniles detained at Cook County Jail, allowing them to continue their education while incarcerated.

**ANSWER**: Defendant admits Plaintiffs are employed at York as teachers. Defendant further admits York is a high school that serves juveniles who are being detained at the Cook County Department of Corrections, allowing them to continue their education while incarcerated. Defendant denies the remaining allegations of this paragraph.

9. The student body of York is 76.6% African American, 19.1% Hispanic, 2.8% Caucasian, and 1.4% other. 95% of the students are low income. 26.2 % are diverse learners, i.e., need special support, and 4.3% of the students have limited English proficiency. The school has a high mobility rate, 94.1%.

**ANSWER**: Defendant admits that on the date of this filing, the student population at York is currently 76.8% Black, 20.8% Hispanic, 1.2% White, and 1.2% Other. Defendant denies the remaining allegations of this paragraph.

10. Plaintiff Cieslik, a tenured teacher, has been a math teacher at York since approximately 2014.

**ANSWER**: Defendant admits Plaintiff Cieslik is a tenured teacher and has been a teacher for the Board of Education since October 13, 1996. Defendant further admits Plaintiff Cieslik has

been a teacher at York since March 11, 2007 and has taught math during that time period. Defendant denies the remaining allegations of this paragraph.

11. Plaintiff Mathen is a tenured teacher with 18 years of experience. Plaintiff Mathen has been a science teacher at York for 12 years.

**ANSWER**: Defendant admits Plaintiff Mathen is a tenured teacher and has been a teacher for the Board of Education since August 30, 2006. Defendant further admits Plaintiff Mathen was a teacher at York from March 11, 2007 through August 26, 2019 and has taught science during that time period. Defendant denies the remaining allegations of this paragraph.

12. Plaintiffs have been subjected to disparagement, unwarranted discipline, unfair performance evaluations, and differential terms and conditions of employment by the Board and its employees, including York's Principal, Sharnette Sims (African-American); York's Assistant Principal, Shone Johnson (African-American); and James Ciesil, Deputy General Counsel for the Board of Education of the City of Chicago (Caucasian).

**ANSWER**: Defendant denies the allegations of this paragraph.

13. Additionally, the York administration has violated their obligations to notify authorities of student disciplinary action, including sexual harassment. York has only reported a maximum of 10 incidents to CPS each year, resulting in a false and fraudulent picture of the safety and security of working and learning conditions at York.

**ANSWER**: Defendant denies the allegations of this paragraph.

14. The York administration, moreover, has discouraged teachers from reporting student disciplinary infractions. Where teachers do report infractions, the York administration fails to impose needed discipline, endangering students and faculty.

**ANSWER**: Defendant denies the allegations of this paragraph.

**OIG Investigation and Report**

15. In the fall of 2016, the Office of the Inspector General ("OIG") began an investigation into allegations of fraudulent practices, sexual improprieties and assaults at York. The OIG selected teachers to interview, and contacted Plaintiffs Mathen and Cieslik in the course of the investigation.

**ANSWER**: Defendant admits the OIG investigated alleged acts of "fraudulent and improper practices" at York, which was summarized in a June 30, 2017 "Executive Memo" to the Board. Defendant further admits that teachers were selected and interviewed and that Plaintiffs were contacted in the course of the OIG's investigation. Defendant denies the allegation that the OIG started its investigation in the fall of 2016. Defendant further denies the remaining allegations of this paragraph.

16. Plaintiffs Mathen and Cieslik truthfully reported to the OIG regarding their knowledge of practices and incidents at York.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and therefore denies the same.

17. The OIG issued a report on or about September 12, 2017 ["OIG Report"], finding that the York administration, and its principal, Sharnette Sims, engaged in practices that misrepresented the performance of the school, thus inflating its performance metrics (a true and correct of the OIG Report is attached as Exhibit A):

    a. Underreporting of disciplinary issues, including violations of the Student Conduct Code regarding sexual assault and harassment.

    b. Falsely inflating enrollment and attendance data.

    c. Awarding students credits that were not earned; pressuring teachers into issuing credits to students who had not earned them.

    d. Inflating graduation rates.

**ANSWER**: The Board admits the OIG issued a report (the "OIG Report") on or about September 12, 2017. The Board further admits a true and correct copy of the OIG Report is attached as Exhibit A to the Complaint. The OIG Report speaks for itself and Defendant denies that Plaintiffs completely, and therefore accurately, cite the statements contained in the OIG Report. Defendant further denies any statements inconsistent with the OIG Report.

18. The OIG Report also revealed dangerous student behaviors, including sexual improprieties at York, finding that some teachers were discouraged from reporting dangerous incidents at the school. These incidents include: assaults, chronic classroom masturbation, and threatening conduct by an organized faction of students who committed sexual assaults in the jail.

**ANSWER**: The OIG Report speaks for itself and Defendant denies that Plaintiffs completely, and therefore accurately, cite the statements contained in the OIG Report. Defendant further denies any statements inconsistent with the OIG Report.

19. Based on the findings of its investigation, the OIG recommended that Principal Sims be removed from her position.

**ANSWER**: Defendant admits the OIG recommended that the Board terminate principal Sims' employment. Defendant denies the remaining allegations of this paragraph and further states the OIG Report speaks for itself.

20. Shortly thereafter, the Board removed Principal Sims from York.

**ANSWER**: Defendant admits that Principal Sims was employed by the Board from January 3, 2000 to the present and her duties were temporarily reassigned to Network 11 after the OIG plan was released, but she resumed her principal duties at York on November 9, 2017 as announced in a CPS press release. Defendant denies the remaining allegations of this paragraph.

21. Despite her removal, on information and belief, Principal Sims continued to perform administrative duties.

6

**ANSWER**: Defendant admits that Principal Sims was employed by the Board from January 3, 2000 to the present and her duties were temporarily reassigned to Network 11 after the OIG plan was released, but she resumed her principal duties at York on November 9, 2017 as announced in a CPS press release. Defendant denies the remaining allegations of this paragraph.

22. Two months later, on or about November 9, 2017, the Board reinstated Principal Sims. On information and belief, the Board had never before rejected the recommendations of the OIG.

**ANSWER**: Defendant admits that Principal Sims was employed by the Board from January 3, 2000 to the present and her duties were temporarily reassigned to Network 11 after the OIG plan was released. Defendant also admits that Principal Sims was reinstated and resumed her principal duties at York on November 9, 2017 as announced in a CPS press release. Defendant denies the remaining allegations of this paragraph.

23. In reaction to the OIG report, the Board purported to conduct their own investigation of York.

**ANSWER**: Defendant admits the Board's Law Department conducted an investigation, review, and analysis of the OIG investigation. Defendant denies the remaining allegations of this paragraph.

24. In the course of this investigation, Plaintiffs Cieslik and Mathen were interviewed by James Ciesil, Deputy General Counsel for the Board, who led the investigation. In response to his questions, Cieslik and Mathen confirmed the allegations that they and their colleagues made to the OIG.

**ANSWER**: Defendant admits that James Ciesil was a former Deputy General Counsel for the Board and conducted the Law Department's investigation, review, and analysis of the OIG investigation of this matter. Defendant further admits that Mr. Ciesil interviewed Cieslik and Mathen as part of that review. Defendant lacks knowledge or information sufficient to form a belief about the

truth of the allegation that Cieslik and Mathen confirmed the allegations that they and their colleagues made to the OIG. Defendant denies the remaining allegations of this paragraph.

25. Due to the sensitive nature of the report, Attorney Ciesil stated that employee names would be redacted for confidentiality.

**ANSWER**: Defendant admits that former Mr. Ciesil, wrote in his CPS Report that the "Law Department's School Law Unit has redacted the [CPS Report] to protect the confidential information it contains." Defendant denies that the CPS Report was redacted because of the "sensitive nature of the report." Defendant denies the remaining allegations of this paragraph.

26. On or about November 2, 2017, CPS released to the media a Memorandum outlining Ciesil's investigation and recommending the reinstatement of Sims. ("CPS Report"). A true and correct copy of the CPS Report is attached as Exhibit B. A copy was published in the Chicago Sun-Times and other media outlets.

**ANSWER**: Defendant admits the CPS Report, which outlined Ciesil's investigation, review, and analysis, was provided to the media and subsequently published in the Chicago Sun-Times and other media outlets on or about November 9, 2017. Defendant further admits a true and correct copy of the CPS Report is attached as Exhibit B to the Complaint. Defendant denies the remaining allegations of this paragraph.

27. The CPS Report was captioned, "Attorney-Client Privileged Work Product Document." It states, inter alia, "[T]his author has included confidential information concerning student records and employment records …. Accordingly, this author cautions that only persons who have a legally permissible basis for seeing such information may review the LDR without redactions." (Emphasis original.)

8

**ANSWER**: Defendant admits the quoted language is contained in the CPS Report, but Defendant denies that Plaintiffs completely, and therefore accurately, cite statements contained in the CPS Report. The CPS Report speaks for itself and Defendant denies any inconsistent statement.

28. The CPS Report contained identifying information regarding Plaintiffs. It was initially published without redactions, and Plaintiffs' names were disclosed. Subsequently, it was redacted, but only partially. In the on-line versions, the redactions could be readily removed, again displaying the names of Plaintiffs.

**ANSWER**: Defendant admits that Plaintiffs were identified in the CPS Report and that the CPS Report was published in the Chicago Sun-Times and other media outlets on or about November 9, 2017. Defendant denies the remaining allegations of this paragraph.

29. The CPS Report identified Plaintiffs by race. It expressly stated that there was a "racial" element to the OIG investigation, insinuating that those teachers who gave information regarding Principal Sims and York were motivated by race. Referring to Plaintiffs and other interviewees, the CPS Report further stated, "The racial implications also are apparent."

**ANSWER**: Defendant admits the CPS Report identified Plaintiffs by race. Defendant further admits the CPS Report stated there was a "racial element to the OIG's investigation" and "[t]he racial implications are also apparent." The CPS Report speaks for itself and Defendant denies that Plaintiffs completely, and therefore accurately, cite the statements contained in the Report. Defendant denies any inconsistent statements with the Report. Defendant denies the CPS Report insinuated that the teachers who gave information regarding Principal Sims and York were motivated by race. Defendant further denies the remaining allegations of this paragraph.

30. The CPS Report besmirched the reputations of Plaintiffs, stating that "most of the teachers interviewed by the OIG had been disciplined by Dr. Sims or had engaged in some other action that tends to show bias." The report stated that 9 of the 10 teachers interviewed by the OIG

9

"had all filed grievances, EOCO charges [equal opportunity charges], been disciplined or been denied a promotion by Dr. Sims…"

**ANSWER**: Defendant admits the quoted language is contained in the CPS Report, but Defendant denies that Plaintiffs completely, and therefore accurately, cite statements contained in the CPS Report. The CPS Report speaks for itself and Defendant denies any inconsistent statement. Defendant denies the report besmirched the reputations of Plaintiff and further denies the remaining allegations of this paragraph.

31. The CPS Report misrepresented Plaintiff Mathen's performance evaluations.

**ANSWER**: Defendant denies the allegations of this paragraph.

32. The Board's release of the investigative report was unprecedented. On information and belief, the Board has never released a public report attacking an investigation by OIG.

**ANSWER**: Defendant denies the allegations of this paragraph.

33. In its Annual Report for 2017, dated January 1, 2018, the OIG stated, "As the OIG has stated, it stands by its report. Unfortunately, Law misunderstood and mischaracterized several aspects of the OIG's investigation. Contrary to Law's assertions, the OIG's report does not contain significant errors. Because the OIG stands by its investigation and findings, the OIG will be addressing this matter with the new administration in the upcoming year."

**ANSWER**: Defendant admits the quoted language is contained in the OIG's fiscal year 2017 Annual Report, dated January 1, 2018, but Defendant denies that Plaintiffs completely, and therefore accurately, cite statements contained in the OIG's 2017 Annual Report. The 2017 Annual Report speaks for itself and Defendant denies any inconsistent statement.

34. After the CPS Report was released, the Network Chief recommended that everyone read the report, vindicating Dr. Sims.

**ANSWER**: Defendant denies the allegations of this paragraph.

35. The CEO of CPS, Forrest Claypool, issued a statement thanking Principal Sims, and apologizing to her for the "blight on her reputation" caused by the OIG investigation and report.

**ANSWER**: Defendant admits that former CPS CEO, Forrest Claypool, was quoted in a CPS press release as saying, "Principal Sims is owed our thanks for her efforts at York, as well as a sincere apology for the blight on her reputation." Defendant denies the remaining allegations of this paragraph.

36. The Board reinstated Principal Sims.

**ANSWER**: Defendant admits that Principal Sims was employed by the Board from January 3, 2000 to the present and her duties were temporarily reassigned to Network 11 after the OIG plan was released. Defendant also admits that Principal Sims was reinstated and resumed her principal duties at York on November 9, 2017 as announced in a CPS press release. Defendant denies the remaining allegations of this paragraph.

37. The Board's accusations that the evidence from the York faculty, including Plaintiffs Mathen and Cieslik, was racially motivated were false and pre-textual.

**ANSWER**: Defendant denies the allegations of this paragraph.

38. Similarly-situated Caucasian principals were removed from their schools based on reports by the OIG of irregularities comparable to those at York:

   a. On or about November 1, 2018, the Board removed a longtime CPS principal from Ogden Elementary School, pursuant to an OIG report for practices that inflated attendance records, thus improving the school's performance rating.

   b. During the summer of 2018, the Board removed interim principal Jessica Biggs from her position at Burke Elementary School, alleging attendance and student transportation irregularities.

11

**ANSWER**: Defendant admits that on or about November 1, 2018, former Ogden Elementary School principal, Michael Beyer, was removed from all duties and responsibilities as the principal at Ogden Elementary School and Ogden International High School following an OIG report that alleged Ogden staff improperly unenrolled students who took extended absences from school, which altered the school's attendance rate. Defendant also admits the Board removed interim principal Jessica Biggs from her position at Burke Elementary School during the summer of 2018, following an OIG investigation that concluded there was attendance falsification and improper student transportation. Defendant denies the allegation that similarly-situated Caucasian principals were removed from their schools based on reports by the OIG of irregularities that are comparable to those at York. Defendant denies the remaining allegations of this paragraph.

39. Plaintiffs Cieslik and Mathen quickly felt the repercussions from the CPS Report, as the Sims administration stoked anger against them.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that Cieslik and Mathen quickly felt the repercussions from the CPS Report. Defendant denies the allegation that the Sims administration stroked anger against Plaintiffs.

40. Sims gave Mathen a biased performance evaluation, despite Mathen's successful grievance. Plaintiff's evaluations declined, as well. The evaluations fail to comply with the evaluation rubric of the Board which purports to standardize teacher evaluations according to specific evidence and evaluative criteria.

**ANSWER**: Defendant denies the allegations of this paragraph.

41. Plaintiffs attempted to address the discrimination and retaliation, contacting the Board's compliance office, the Equal Opportunity Compliance Office ("EOCO"). No ameliorative action was taken.

**ANSWER**: Defendant admits that Plaintiffs contacted and filed claims of alleged discrimination and retaliation with the Board's compliance office, the EOCO. Defendant denies that Plaintiffs were discriminated and/or retaliated against. Defendant denies the remaining allegations of this paragraph.

42. On or about May 8, 2018, Plaintiff Cieslik filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights complaining of discrimination based on race, color, and retaliation.

**ANSWER**: Defendant admits Plaintiff Cieslik filed Charge No. 440-2018-05123 with the Equal Employment Opportunity Commission on or near May 8, 2018 and alleged discrimination based on race, color, and retaliation. Defendant denies that it is liable for any unlawful conduct. Defendant denies the remaining allegations of this paragraph.

43. On or about June 28, 2018, Mathen filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights complaining of discrimination based on race, color and retaliation. Those charges remain pending.

**ANSWER**: Defendant admits Plaintiff Mathen filed Charge No. 440-2018-06328 with the Equal Employment Opportunity Commission on or near June 24, 2018 and alleged discrimination based on race, color, and retaliation. Defendant denies that it is liable for any unlawful conduct. Defendant denies the remaining allegations of this paragraph.

## COUNT I
## RACE DISCRIMINATION, CIESLIK AND MATHEN,
## IN VIOLATION OF TITLE VI

44 – 49.    **ANSWER**: Defendant makes no answer to dismissed Count I.

## COUNT II RETALIATION, CIESLIK AND MATHEN,
## IN VIOLATION OF TITLE VI

50 – 60.    **ANSWER**: Defendant makes no answer to dismissed Count II.

## COUNT III

**RETALIATION, CIESLIK AND MATHEN, IN VIOLATION OF TITLE IX**

1-60. Plaintiffs repeat and re-allege paragraphs 1 through 60 above as though fully set forth herein.

**ANSWER**: Defendant restates its answers to paragraphs 1 through 60 as if fully set forth herein.

61. Title IX prohibits retaliation against employees who oppose sex discrimination.

**ANSWER**: Defendant admits Title IX prohibits retaliation, but denies it retaliated and/or discriminated against Plaintiffs or that it engaged in any unlawful conduct for which it may be liable.

62. Plaintiffs engaged in statutorily protected activity by opposing the sex discrimination and harassment to which colleagues were subjected, by participating in investigations of York by the OIG and Attorney Ciesil.

**ANSWER**: Defendant denies the allegations of this paragraph.

63. The Board knew about Plaintiffs' protected activity.

**ANSWER**: Defendant denies that Plaintiffs engaged in any protected activity and therefore denies the allegations of this paragraph.

64. In response to this protected activity, the Board retaliated against Plaintiffs by accusing them of racist motivations, impugning their integrity, defaming their reputations, and giving false negative performance evaluations that prospectively denied them job opportunities.

**ANSWER**: Defendant denies the allegations of this paragraph.

65. The Board retaliated against Plaintiffs with malice and/or reckless indifference to Plaintiff's federally protected rights.

**ANSWER**: Defendant denies the allegations of this paragraph.

66. As a proximate result of the Board's retaliatory actions, has suffered lost wages, physical injury and sickness, emotional distress, and compensatory damages and has incurred attorney's fees and costs.

**ANSWER**: Defendant denies the allegations of this paragraph.

67. Plaintiffs have suffered irreparable injury.

**ANSWER**: Defendant denies the allegations of this paragraph.

68. Plaintiffs have no adequate remedy at law.

**ANSWER**: Defendant denies the allegations of this paragraph.

**WHEREFORE, Defendant denies that Plaintiffs are entitled to any relief whatsoever, and pray this Honorable Court enter judgment in its favor and award the costs of defending this lawsuit, and any other relief the Court deems just.**

## COUNT IV
## RACE DISCRIMINATION, CIESLIK, IN VIOLATION OF TITLE VII

69 – 74. **ANSWER**: Defendant makes no answer to dismissed Count IV.

## COUNT V
## RETALIATION, CIESLIK, IN VIOLATION OF TITLE VII (RACE)

75 – 86. **ANSWER**: Defendant makes no answer to dismissed Count V.

## JURY DEMAND

The Defendant Board of Education of the City of Chicago demands a trial by jury on all issues raised in the foregoing complaint.

Dated: July 28, 2021   Respectfully submitted,

**DEFENDANT BOARD OF EDUCATION OF THE CITY OF CHICAGO**

JOSEPH MORIARTY, General Counsel

By: /s/ Rashad A. Simmons

Rashad A. Simmons, Atty No. 6319497

15

Lindsey Goldberg / legoldberg@cps.edu
Rashad A. Simmons / rasimmons@cps.edu
Board of Education of the City of Chicago
One North Dearborn Street
Law Department, Suite 900
Chicago, Illinois 60602
(773) 553-1700

## AFFIRMATIVE DEFENSES

Defendant Board of Education of the City of Chicago, without waiving and subject to its answers and objections to Plaintiffs' Complaint, asserts the following for its affirmative defenses:

1. All decisions relating to Plaintiffs' employment were made in good faith and based on legitimate, non-discriminatory, and non-retaliatory business reasons.

2. If Plaintiffs are entitled to recover damages from the Board, their recovery should be limited to the extent they failed to properly mitigate their damages.

3. If Plaintiffs failed to raise allegations before the EEOC or IDHR, those allegations are barred.

4. If Plaintiffs seek to recover for alleged incidents occurring outside the applicable 300-day limitation period for the filing of an administrative charge of discrimination or retaliation, Plaintiffs may not recover for any such incidents.

5. Plaintiffs may not maintain a claim for punitive damages against the Board of Education of the City of Chicago. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

Dated: July 28, 2021          Respectfully submitted,

        **DEFENDANT BOARD OF EDUCATION OF THE CITY OF CHICAGO**

        JOSEPH MORIARTY, General Counsel

        By:    /s/ Rashad A. Simmons
                Rashad A. Simmons, Atty No. 6319497

Lindsey Goldberg / legoldberg@cps.edu
Rashad A. Simmons / rasimmons@cps.edu
Board of Education of the City of Chicago
One North Dearborn Street
Law Department, Suite 900
Chicago, Illinois 60602
(773) 553-1700

**CERTIFICATE OF SERVICE**

I, Rashad A. Simmons, certify that on July 28, 2021, a copy of the foregoing was filed electronically using the Court's electronic filing system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system, and parties may also access this filing through the Court's system.

By: /s/ Rashad A. Simmons
Rashad A. Simmons, ARDC No. 6319497